THORKIL FOG, Plaintiff and Appellee, *v.* FRANCISCO VÁZQUEZ ESCOBAR, Defendant and Appellant.

No. 7898. Argued December 7, 1939.—Decided January 31, 1940.

*Antonio Lens Cuena* for appellant. *Enrique Igaravídez* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Thorkil Fog brought an action in the District Court of Arecibo against Francisco Vázquez Escobar to recover from the latter $1,050 as damages.

It was alleged in the complaint that about the months of July and August, 1937, he was in possession as lessee of a parcel of land containing 17.5 cuerdas which is described therein, of which he planted to pineapples twelve cuerdas on his own account.

That in July, 1937, he agreed to sell and deliver before the following August all the slips and suckers grown on the parcel at $10 for each thousand of slips and $7.00 for each thousand of suckers and he estimated at $1,050 the value of the slips and suckers that he could harvest and sell.

That at the end of the first week in August, 1937, and while he was about to start the gathering, the defendant Francisco Vázquez called at the farm and on the assumption that he was the owner of the farm and of the crops growing thereon forbade the plaintiff and his employees to proceed with the gathering. On August 10, 1937, the plaintiff called in person again on the defendant who again refused to permit him to do the gathering unless he agreed to accept the hard terms offered him. On that same day the defendant returned to the farm together with the marshal of the District Court of Arecibo who put him in possession of the same, thus preventing him from gathering his pineapple slips and suckers. He had to rescind the sale of them and was thus deprived of the reasonable value thereof which amounted to $1,050.

That the plaintiff's lease is recorded in the registry of property and will not expire until October, 1937, the plaintiff having paid in advance the rentals up to that time.

The defendant finally answered and denied that he had forbidden the plaintiff to gather the pineapple slips, the plaintiff having voluntarily done so. He admitted having been put in possession of the farm by the marshal, but that such possession was not material but symbolic.

The case went to trial and on April 19, 1938, the court found against the defendant who was adjuged to pay part of the sum claimed. The court based its judgment on the following findings of fact:

"The defendant bought the property at the public auction sale and was put in possession thereof by the marshal of this court. It appears from the evidence that at the time of taking possession there were on the property pineapple slips and suckers belonging to the plaintiff who insisted on being allowed to gather them relying on his recorded contract which had not yet expired. It appears from the evidence as a whole that the defendant thought that once he was judicially put in possession of the property, the plaintiff was only entitled to uproot the plants and depart. The cutting of the plants

meant an additional expense to the cost of gathering the slips, which expense the plaintiff was not bound to bear. The defendant testified that he was ready to bear said cost, but we have not been convinced regarding such particular of his testimony. Anyhow, if the plaintiff refused to cut the plants, it was the defendant's duty to allow him to gather the slips, especially as the lessee was there by virtue of a recorded contract which entitled him to the use of the property until its expiration, provided he did not maliciously damage the same.

"Although the plaintiff appears not to have been as diplomatic as he should have been in discussing the matter, it is our conviction that there were unnecessary losses due to a certain amount of ignorance on the part of the defendant regarding the plaintiff's rights.

"From the evidence as a whole and from some familiarity on our part with this sort of crops, we understand that the amount of slips and suckers which the plaintiff claimed were on the property is excessive. From the very letter, submitted in evidence regarding the future delivery of slips, to John M. Kohn, it appears that he expected to gather considerably less than the amount of slips which he alleged were on the property. Moreover, it must be borne in mind that the gathering of slips requires some outlay and that it is not every crop that produces slips. We also think that the price for slips and suckers quoted in the letter from John Kohn was rather a tentative offer for slips of high quality, for that is not the usual market price for an average crop. The witness produced by the plaintiff somewhat as an expert was not as sufficiently explicit as was to be expected to prove definite damages, although we acknowledge that he meant to be truthful, as befits a witness who testifies under oath. Besides, as the property was going to be vacated by reason of the expiration of the contract, the plaintiff was not going to spend the same amount of money that he would for a good crop as in the first years. The amount of slips left on the estate must have been small.

"Weighing the evidence as a whole and taking into account all the facts of the case, the court deems to have meted out justice by finding for the plaintiff and adjudging the defendant to pay to the plaintiff the sum of $350 and the costs, excluding attorney's fees."

The defendant appealed and has assigned in his brief as errors committed by the court: "to hold, from the evidence submitted, that he had inflicted on the plaintiff the damages

alleged in the complaint, and its failure to take as a basis, for an assessment of the damages, the testimony of the witnesses for the plaintiff.''

 We have considered the evidence and the briefs and to our mind the judgment is sustained by the evidence.

The appellant failed to appear at the hearing of the appeal and the appellee moved that because of his obstinacy and the frivolity of the appeal, the costs of this appeal should be imposed on him, including a reasonable sum for attorney's fees.

Although we have just stated that the judgment is sustained by the evidence, we can not likewise conclude that the appeal is frivolous and that the defendant has been obstinate.

This case is on the border line. The trial court itself said: ''Although the plaintiff appears not to have been as diplomatic as he should have been in discussing the matter, it is our conviction that there were unnecessary losses due to a certain amount of ignorance on the part of the defendant regarding the plaintiff's rights.'' And this is true.

Perhaps what the defendant should have done, on being apprised of the decision in the case and the grounds on which it rested, was to consent to the judgment, even though he did not feel that he had wilfully inflicted the damages which he was ordered to make good, as the prosecution of the appeal must have cost him more than the amount of the judgment; but it can not be asserted that he was not within his rights in invoking the jurisdiction of this court to have the matter finally determined.

No frivolity or obstinacy is involved in the present case. This is a border-line case in which this court yields to the weighing of the evidence by the court with original jurisdiction, which was in a better position than we to weigh the same. Our determination of the case rests thereon.

From the foregoing, the appeal must be dismissed and the judgment appealed from affirmed, the costs of the appeal not to be imposed on the appellant.